CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA



NUMBER: 2021 - 10019          DIVISION "E"          SEC: "H"

**SECTION 7**

KELLY P. GIARRATANO

versus

HUNTINGTON INGALLS INCORPORATED (formerly NORTHROP GRUMMAN
SHIPBUILDING, INC., formerly, NORTHROP GRUMMAN SHIP SYSTEMS, INC., formerly,
AVONDALE INDUSTRIES, INC. and formerly AVONDALE SHIPYARDS, INC., formerly
AVONDALE MARINE WAYS, INC.); LOUISIANA INSURANCE GUARANTY
ASSOCIATION; THE TRAVELERS INDEMNITY COMPANY; CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON; and PENNSYLVANIA GENERAL INSURANCE COMPANY
(formerly, American Employers Insurance Company)

FILED:_____
                                                      DEPUTY CLERK

## PETITION FOR DAMAGES

The petition of Kelly P. Giarratano, a person of the full age of majority and resident of the

State of Louisiana, with respect represents:

1.

The following executive officers of Avondale were domiciled in Orleans Parish: C. Edwin

Hartzman, Hettie Dawes Eaves, Henry "Zac" Carter, John McCall, and Ewing Moore.   Hughie

Verdoodt and Kelly Giarratano were exposed to asbestos in Orleans Parish, and Kelly Giarratano

received injury in Orleans Parish. Accordingly, venue is proper in Orleans Parish against all

defendants pursuant to Louisiana Code of Civil Procedure articles 42, 73 and 74.

2.

Defendants, HUNTINGTON INGALLS INCORPORATED (formerly NORTHROP

GRUMMAN SHIPBUILDING, INC., formerly, NORTHROP GRUMMAN SHIP SYSTEMS, INC.,

formerly, AVONDALE INDUSTRIES, INC. and formerly AVONDALE SHIPYARDS, INC.,

formerly AVONDALE MARINE WAYS, INC.); LOUISIANA INSURANCE GUARANTY

ASSOCIATION (who has a statutory obligation to the plaintiffs arising out of policies of insurance

issued by insolvent insurer, Lamorak Insurance Company); THE TRAVELERS INDEMNITY

COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; and PENNSYLVANIA

GENERAL INSURANCE COMPANY (formerly, American Employers Insurance Company)

(hereinafter collectively referred to as "defendants"), are all corporations incorporated under the laws

of the various states of the United States. Defendants have their principal place of business in

various states of the United States, as well as some foreign countries. All of them may be served

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504 - 407 - 0000

Receipt Date     12/13/2021 1:28:00 PM
Cashier                          jboe
                                Cash Register 1

Case Number     2021 - 10019

Amount Received  $ 516.50

Over Payment         $ 0.00

Payment / Transaction List

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Judicial College | $0.50 | $0.50 | $0.00 |
| Indigent Legal Fee | $10.00 | $10.00 | $0.00 |
| SUPM Civil Fee | $25.00 | $25.00 | $0.00 |
| Processing Fee | $10.00 | $10.00 | $0.00 |



under and by virtue of the Long Arm Statute of the State of Louisiana, either through their authorized

agents, servants, and/or employees, or through the Secretary of State, State of Louisiana.

3.

Kelly Giarratano was raised by her grandfather, Hughie Verdoodt, from the time she was

born in 1962. Hughie Verdoodt worked with and/or on the premises of Huntington Ingalls

Incorporated (formerly, Northrop Grumman Shipbuilding, Inc., formerly Northrop Grumman Ship

Systems, Inc., formerly Avondale Industries, Inc. and formerly Avondale Shipyards, Inc., formerly

Avondale Marine Ways, Inc.) (hereinafter sometimes "Avondale" or "Avondale Industries, Inc.")

from 1942 through 1979. From approximately 1962 through 1979, Hughie Verdoodt, the grandfather

of Kelly Giarratano who raised her from the time she was born, was employed in various positions

by or on the premises of "Avondale". During this employment, Hughie Verdoodt was exposed to

dangerously high levels of asbestos in the normal routine course of his work.

4.

From approximately 1962 through 1979, while Hughie Verdoodt was a direct employee of

Avondale, Henry "Zac" Carter, Burnette "Frenchy" Bordelon, James O'Donnel, C. Edwin Hartzman,

Albert Bossier, Jr., James T. Cole, Hettie Dawes Eaves, John Chantrey, John McCue, Ewing Moore,

Ollie Gatlin, Earl Spooner, Steven Kennedy, Peter Territo, George Kelmell, Edward Blanchard, Dr.

Joseph Mabey, and J. Melton Garrett were executive officers of Avondale with the specific

responsibility for the health and safety of Hughie Verdoodt and his fellow employees during the time

Kelly Giarratano was exposed to asbestos. Henry "Zac" Carter, Burnette "Frenchy" Bordelon, James

O'Donnel, C. Edwin Hartzman, Albert Bossier, Jr., James T. Cole, Hettie Dawes Eaves, John

Chantrey, John McCue, Ewing Moore, Ollie Gatlin, Earl Spooner, Steven Kennedy, Peter Territo,

George Kelmell, Edward Blanchard, Dr. Joseph Mabey, and J. Melton Garrett have since died and/or

cannot be located. Lamorak Insurance Company (as successor in interest to the liability for policies

of insurance issued by Commercial Union Insurance Company, Employers Commercial Union

Insurance Company), Pennsylvania General Insurance Company (formerly, American Employers

Insurance Company), The Travelers Indemnity Company, and Certain Underwriters At Lloyd's,

London provided insurance coverage for the liability of the following executive officers: Henry

"Zac" Carter, Burnette "Frenchy" Bordelon, James O'Donnel, C. Edwin Hartzman, Albert Bossier,

Jr., James T. Cole, Hettie Dawes Eaves, John Chantrey, John McCue, Ewing Moore, Ollie Gatlin,

Earl Spooner, Steven Kennedy, Peter Territo, George Kelmell, Edward Blanchard, Dr. Joseph

Mabey, and J. Melton Garrett. Pursuant to Louisiana Revised Statute 22:1269, plaintiffs herein

assert a direct action against Pennsylvania General Insurance Company (formerly, American Employers Insurance Company), The Travelers Indemnity Company, and Certain Underwriters At Lloyd's, London for the liability of the following deceased executive officers: Henry "Zac" Carter, Burnette "Frenchy" Bordelon, James O'Donnel, C. Edwin Hartzman, Albert Bossier, Jr., James T. Cole, Hettie Dawes Eaves, John Chantrey, John McCue, Ewing Moore, Ollie Gatlin, Earl Spooner, Steven Kennedy, Peter Territo, George Kelmell, Edward Blanchard, Dr. Joseph Mabey, and J. Melton Garrett.

5.

Lamorak Insurance Company was declared insolvent on March 11, 2021.  Plaintiffs now make claims against Louisiana Insurance Guaranty Association (hereinafter referred to as "LIGA"), who has a statutory obligation to plaintiff based upon policies of insurance issued by insolvent insurer, Lamorak Insurance Company, including but not limited to, employers' liability, commercial general liability insurance policies and/or excess liability insurance policies covering the following executive officers of Avondale for the liability asserted herein: Henry "Zac" Carter, Burnette "Frenchy" Bordelon, James O'Donnel, C. Edwin Hartzman, Albert Bossier, Jr., James T. Cole, Hettie Dawes Eaves, John Chantrey, John McCue, Ewing Moore, Ollie Gatlin, Earl Spooner, Steven Kennedy, Peter Territo, George Kelmell, Edward Blanchard, Dr. Joseph Mabey, and J. Melton Garrett.

6.

Additionally, Henry "Zac" Carter, Burnette "Frenchy" Bordelon, James O'Donnel, C. Edwin Hartzman, Albert Bossier, Jr., James T. Cole, Hettie Dawes Eaves, John Chantrey, John McCue, Ewing Moore, Ollie Gatlin, Earl Spooner, Steven Kennedy, Peter Territo, George Kelmell, Edward Blanchard, Dr. Joseph Mabey, and J. Melton Garrett were insured by American Motorists Insurance Company and Highlands Insurance Company for the liability asserted herein, and plaintiff asserts a claim against Avondale for this liability pursuant to a buy-back contract and agreement.

7.

Under a buy-back contract and agreement between Avondale and American Motorists Insurance Company, Avondale is an additional insurer under the American Motorists Insurance Company policies providing coverage to Avondale and its executive officers and employees for the liability asserted in plaintiffs' petition.  The plaintiff asserts an action against Avondale pursuant to this contract and agreement pursuant to La. Civil Code articles 1821-1823.

8.

Under a buy-back contract and agreement between Avondale and Highlands Insurance Company, Avondale is an additional insurer under the Highlands Insurance Company policies providing coverage to Avondale and its executive officers  and employees for the liability asserted in plaintiffs' petition.  The plaintiff asserts an action against Avondale pursuant to this contract and agreement pursuant to La. Civil Code articles 1821-1823.

9.

Also, Avondale is vicariously liable for the acts of its executive officers: Henry "Zac" Carter, Burnette "Frenchy" Bordelon, James O'Donnel, C. Edwin Hartzman, Albert Bossier, Jr., James T. Cole, Hettie Dawes Eaves, John Chantrey, John McCue, Ewing Moore, Ollie Gatlin, Earl Spooner, Steven Kennedy, Peter Territo, George Kelmell, Edward Blanchard, Dr. Joseph Mabey, and J. Melton Garrett.

10.

On a daily basis during the employment of Hughie Verdoodt, Kelly Giarratano was exposed to dangerously high levels of asbestos through contact with him as well as through the handling and washing of his clothes and other objects belonging to him as well as being in the area of others washing and handling his clothes and other objects belonging to him.

11.

As a result of these exposures to asbestos, Kelly Giarratano contracted cancer, asbestos-related lung cancer, and other related ill health effects associated therewith, which was first diagnosed on approximately August 12, 2021.

12.

Hughie Verdoodt was employed in various positions by or on the premises of Avondale which resulted in asbestos exposure to Kelly Giarratano.  Avondale and its executive officers were aware or should have been aware of the dangerous condition presented by exposure to asbestos to Mr. Verdoodt and to his family members and to those who frequented his home. Avondale and its executive officers were aware or should have been aware that Kelly Giarratano (and other similarly situated family members of their working force) would suffer from asbestos-related diseases and other ill health effects associated therewith as a result of this exposure, but Avondale failed and/or willfully withheld from them knowledge of the dangers from exposure to asbestos fiber.

- 4 -

13.

In addition to the foregoing acts of negligence and intentional concealment, Avondale and its executive officers are guilty of the following:

a) Failing to reveal and knowingly concealing critical medical information from Hughie Verdoodt and Kelly Giarratano, including the ability to expose family members to asbestos through the clothing of its workers;

b) Failing to reveal and knowingly concealing the inherent dangers in the use of asbestos, and other harmful substances in their manufacturing process and/or in connection with the work which exposed Hughie Verdoodt and Kelly Giarratano;

c) Failing to provide necessary protection to Hughie Verdoodt and Kelly Giarratano;

d) Failing to provide clean, respirable air and proper ventilation;

e) Failing to provide necessary showers and special clothing;

f) Failing to segregate work areas so that workers would not be exposed to deadly asbestos fiber;

g) Failing to provide necessary and adequate respiratory protection;

h) Failing to warn employees of the dangers associated with exposure to asbestos;

i) Failing to use non-asbestos containing products on jobs where non-asbestos containing products were specified.

j) Wanton and reckless disregard in the storage, handling, and transportation of asbestos;

k) Requiring employees to dispose of asbestos in dumpsters, into the river, and onto the land instead of properly disposing of asbestos and asbestos fiber, thereby further exposing employees (and subsequently their family members) to asbestos;

l) Requiring employees to dispose of asbestos under buildings instead of properly disposing of asbestos and asbestos fiber, thereby further exposing employees (and subsequently their family members) to asbestos;

m) Failing to warn of the dangers of exposure to asbestos;

n) Requiring employees to dispose of asbestos without precautions to prevent exposure;

o) Failing to post warnings regarding asbestos and the hazards of same;

p) Failing to warn employees that exposure to asbestos could cause deadly diseases including mesothelioma, cancer, asbestosis, pleural thickening, and pleural plaques; and

q) Failing to warn employees of the invisible nature of harmful asbestos, that it could be carried home on clothing and other objects by a worker, and that it could cause diseases such as asbestosis, pleural plaques, pleural thickening, cancer, and mesothelioma.

These defendants committed these negligent and intentional acts knowing full well that Kelly Giarratano's injuries would follow or were substantially certain to follow.

14.

Avondale had the responsibility of providing Hughie Verdoodt with a safe place to work and safety equipment with which to conduct his work; however, he negligently and/or intentionally failed to carry out these duties and failed to protect them from the dangers of toxic fiber and dust exposure knowing full well or being substantially certain that certain family members of workers, including Kelly Giarratano, would develop disease as a result thereof.

15.

Avondale had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted Kelly Giarratano's asbestos-related lung cancer and for which these defendants are strictly liable under Louisiana law.

16.

Defendant, Avondale, is responsible for the conduct of those individuals and companies working on their premises with asbestos products which resulted in exposure to asbestos to Kelly Giarratano, which asbestos was defective and which presented an unreasonable risk of harm, and which asbestos resulted in her asbestos-related lung cancer, and for which defendant is liable under Louisiana law.

17.

Avondale failed to exercise reasonable care for the safety of persons on or around their property and failed to protect the Hughie Verdoodt and Kelly Giarratano from the unreasonably dangerous conditions created by asbestos which existed due to their failure to properly handle and control the asbestos which was in their care, custody, and control. At all times material herein, standards were in existence, including the Walsh Healey standards and Louisiana Sanitary Code - Industrial Health Standards, which required Avondale herein to provide Hughie Verdoodt and his co-workers who handled or were exposed to harmful material with protection from the harms of asbestos. Avondale failed and/or willfully refused to comply with these standards thereby resulting in exposure to asbestos to the Mr. Verdoodt, thereby resulting in injury to Kelly Giarratano.

18.

The defendants, including Avondale, were informed that asbestos dust presented health risks by the U.S. Government or agencies acting on behalf of the U.S. Government no later than 1942. The U.S. Government issued advisories, through the U.S. Maritime Commission and the Walsh Healey Public Contracts Act, to all government contractors regarding their findings of enumerated health risks in the work place. During the 1950s, the Department of Defense adopted

and distributed to all government contractors, safety standards that pertained to the use of these defendants' products in various work places. In 1952, Louisiana adopted a workers' compensation remedy for asbestosis. In the 1950s, the Walsh-Healy Act was promulgated, which adopted safety standards and regulations regarding asbestos dust. Also, in the 1940s, Louisiana adopted safety standards and regulations regarding asbestos pursuant to the Louisiana Sanitary Code's Industrial Health standards. Based on information and belief, each of these companies, their predecessor, and executive officers were made aware of these findings at the time they were issued. This was done without warning to plaintiff and without the knowledge on the part of the plaintiff that she was in danger. On a daily basis during his employment at Avondale, Hughie Verdoodt was exposed to asbestos being used and handled on vessels at Avondale, including commercial and government vessels at Avondale. Accordingly, Kelly Giarratano was exposed to asbestos from the person, clothing, and other objects of her grandfather, Hughie Verdoodt, from asbestos which had been used and/or was to be used on the vessels, which included commercial and government vessels at Avondale. This exposure occurred because Avondale and its executive officers failed to comply with these safety standard identified herein. They failed to properly handle and control the asbestos. Avondale and its executive officers are liable for the misuse of asbestos, including but not limited to the failure to warn of the hazardous nature and dangers of asbestos and for the failure to take and implement reasonably safe and industrial hygiene measures, failure to train, and failure to adopt safety procedures for the safe installation and removal of asbestos.

19.

Prior to the time Kelly Giarratano was exposed to asbestos, all defendants were aware or should have been aware of the health hazards associated with exposure to asbestos, including but not limited to pleural plaques, fibrosis, asbestosis, cancer, and mesothelioma. Further, all defendants were aware or should have been aware that invisible asbestos particles could remain airborne for many hours and that exposure could occur even after actual use of the products ceased; nevertheless, defendants remained silent as to the unreasonably dangerous nature of the products which suppression of the truth was made with the intention of obtaining an unjust advantage over unsuspecting victims. Such conduct constitutes fraud under Louisiana law.

20.

All defendants made the misrepresentations cited in the foregoing paragraphs despite their knowledge of the falsity, and defendants fraudulently concealed and suppressed the truth

about the dangerous nature of the products with the intent to induce purchasers to buy the products and innocent users and employees to continue to be exposed to same without concern for their health.

21.

As a result of the misrepresentations of the defendants that asbestos-containing products were safe, nontoxic, fully tested, desirable, and suitable for use, and as a result of the defendants suppression of the truth about the health hazards associated with exposure to said products, Hughie Verdoodt and Kelly Giarratano were exposed, and as a result Kelly Giarratano contracted asbestos-related lung cancer, which was diagnosed on approximately August 12, 2021.

22.

The misrepresentations and suppression of the truth of occupational health hazards were made by all defendants with the intent of obtaining an unjust advantage over Kelly Giarratano, and other family members of employees who remained uninformed and ignorant of the risks of contracting occupational lung diseases from their work environment. These misrepresentations and suppressions were calculated to produce the effect of misleading the employees so that they would not associate any lung disease with occupational exposures on the job. As a result of these misrepresentations and suppressions, all defendants sought to prevent or limit occupational disease claims by injured employees and claims from family members who also contracted disease. These actions constitute fraud under Louisiana law.

23.

The health hazards of asbestos have been recognized by those in the business for two thousand years. The Greek geographer Strabo and the Roman historian Pliny the Elder both recognized asbestosis in slaves whose task was to weave asbestos into cloth. There is conclusive evidence (more specifically outlined below) that by the end of 1930, it was widely known in the United States by those in the industry and their insurers that exposure to asbestos could cause asbestosis and cancer, that asbestosis was a fatal disease, and that the latency period of asbestosis and other asbestos-related disease was of many years duration subsequent to initial exposure, yet this knowledge was suppressed from workers like Hughie Verdoodt, and family members of workers such as Kelly Giarratano.

24.

By the time Hughie Verdoodt began working with and around asbestos products, virtually every state in the Unites States recognized asbestosis as a compensable claim under workers'

compensation laws.  In fact, the Louisiana legislature in 1952, when it enacted its first Workers'
Compensation Occupational Disease Act, listed asbestosis as a compensable occupational
disease.  Moreover, all companies with government contracts were bound to comply with health
and safety requirements of the Walsh Healey Public Contract Act first promulgated in 1936, as
well as the regulations of the U.S. Navy and U.S. Maritime Commission in 1943 as well as the
Louisiana Sanitary Code's Industrial Health standards in 1943.  These standards addressed
asbestos hazards and asbestosis as a resultant disease of exposure to asbestos.  They also required
isolation of dusty work, ventilation, use of respirators, and medical examinations by doctors.
Despite this, Hughie Verdoodt and Kelly Giarratano, were never warned of any hazard associated
with asbestos, were never protected by use of adequate ventilation, and Hughie Verdoodt was
required to work with and around asbestos products.  Despite the fact that all defendants were
aware of the hazards of asbestos and silica and other toxic substances to which Hughie Verdoodt
and Kelly Giarratano were exposed, they failed and refused to warn of these dangers and,
furthermore, concealed these hazards.  Moreover, defendants suppressed and prevented the
dissemination of information relating to the hazards of asbestos, thus constituting fraud under
Louisiana law.  Even after OSHA became the law in 1971, they were not warned of the health
hazards associated with exposure to asbestos.

25.

The acts of the defendants, as described above, constitute a fraudulent misrepresentation
and/or concealment which proximately caused the injuries to the Petitioners in the following
manner:

1) The material published or caused to be published was false and incomplete and that the defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

2) The defendants intended the publication of false and misleading reports and/or the non-disclosure of documented reports of the health hazards of asbestos:
   a) To maintain a favorable atmosphere for the continued sale and distribution and use of asbestos and asbestos-related products;
   b) To assist in the continued pecuniary gain of the defendants through the sale of asbestos products to an ignorant public;
   c) To influence in the defendant's favor, legislation to regulate asbestos exposures and unlimited medical and disability claims for compensation;
   d) To provide a defense against lawsuits brought for injury resulting from asbestos disease;
   e) To prevent relevant medical inquiry about asbestos disease;

        f)     To mislead the general public, and the Petitioner herein, about the hazards associated with asbestos products; and

        g)     To induce the Petitioner to use and continue to use asbestos products.

3)     The Petitioners reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and the absence of published medical and scientific reports on the hazards of asbestos and asbestos-related products because Petitioner believed it to be safe.

4)     Defendants, intended the Petitioner to rely upon the published reports regarding the safety of asbestos and asbestos-related products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, and therefore to continue their exposure to those products.

5)     Defendants are in a position of superior knowledge regarding the health hazards of asbestos and therefore the Petitioner and others deciding to use the said asbestos-containing products to which Petitioner was exposed, had a right to rely on the published reports commissioned by the defendants regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

26.

Insurance premiums were set based on the risks posed by the insured. Insurance companies discussed the hazards of asbestos with insured who manufactured, used, or distributed asbestos products. Insurance field inspectors would survey the premises or operations of the insured, advise the insured of the hazard, and set the premium accordingly. This was true prior to the time that Hughie Verdoodt was first exposed to asbestos and continued throughout their employment. The fact that workers' compensation insurance carriers were concerned about asbestos is evidenced by the 1932 occupational disease report in "The National Underwriter" where asbestos was listed as a serious hazard receiving special attention "for some time" in insurance underwriting. When the Supreme Court of North Carolina (*McNeely v. Carolina Asbestos Co.*, May 23, 1934) determined that asbestosis was compensable under its workers' compensation law, insurance executive F. R. Jones wrote that the McNeely case and others like it injected elements of uncertainty that rendered the hazards of asbestosis "often uninsurable at practicable rates."; he wrote that even though rates for those in the asbestos business were high, "their adequacy ... is generally doubted." To avoid losing money, insurance companies instituted a practice of servicing claims as well as providing the insurance--"sort of a right pocket to left pocket...in other words there wasn't any way (insurance companies) could lose money on it." (See deposition of Harry J. Flynn in Bradley v. Todd Shipyards, Inc., C.A. No. 85 - 05657, Div. "D", Civil District Court for the Parish of Orleans.)

- 10 -

27.

That all defendants and the companies that insured them knew of the health hazards associated with exposure to asbestos since the 1930s (and suppressed this information) is shown by numerous documents and testimony. In fact, the knowledge was so well recognized in the asbestos industry that the insurance industry considered confessing liability; instead, they decided to make it "economically impossible" for plaintiffs to pursue their claims. The minutes of meetings in 1976 and 1977 of American Mutual Insurance Alliance (an insurance industry association) confirm that the hazards of asbestos exposure have been known for many years. These minutes specifically state that medical research in 1900 linked asbestos with asbestosis and by 1935 it was recognized that asbestos caused cancer. In a memorandum of a meeting of a discussion group dated April 21, 1977, it was stated: The meeting closed with a unanimous rejection of a suggestion that liability in asbestos cases be admitted and the carriers agreed between themselves as to their respective losses and expenses. That insurance companies and their insureds were working together to discourage plaintiffs from pursuing valid claims is also demonstrated in earlier memos. In minutes dated May 22, 1974, discussing *Borel v. Fibreboard Paper Products Corporation*, 493 F.2d 1076, (5th Cir. 1973), cert. denied, 419 U.S. 869 (1974), it is stated: "The appeals court decision in the Borel case of course sets a very bad precedence for our other pending asbestosis cases and (sic) this jurisdiction we will soon have to formulate a **'game plan'** for the continued defense of these asbestosis cases **with the other defendants."** In a memo dated October 22, 1974, it was decided that the asbestos defendants and their insurance companies would resist pending cases "and attempt to make this economically (sic) impossible for the plaintiffs to pursue the other cases." These attempts to prevent and stifle valid claims by plaintiffs shows that the defendants, to this day, are committing fraud.

28.

In addition to the IHF, there were other trade associations which were formed to aid and service companies in the asbestos industry. Members of the Asbestos Textile Institute (ATI), founded on November 16, 1944, included companies which produced asbestos containing cloth and other products. At the June 13, 1946, meeting of the Asbestos Textile Institute, a question was posed as to whether or not a committee should be formed to deal with the question of dust control. Beginning on June 13, 1946, a subcommittee of the dust control committee of the Asbestos Textile Institute recommended that the committee contact the United States government, the state governments in which member plants were located, the Mellon Institute,

- 11 -

and Metropolitan Life for the purpose of preparing a tentative program aimed at bringing to member companies the assistance of qualified technical and medical people.  In 1946, the ATI was presented with a plan for a central medical committee which would call for individual medical programs at all facilities using asbestos as well as a central medical department which would be responsible to the association.  Recommendations for initial medical examinations and periodic follow-up examinations were also made.  The recommendation for periodic medical examinations was characterized by the presenting doctor as "fundamental in an industry where there was a 'known occupational health hazard'".  While the ATI considered this proposal, it nonetheless elected to defer the plan.  During the late 1940's and early 1950's, the ATI was presented with a number of other plans for wide ranging research on various issues dealing with asbestos-related disease in the asbestos industry.  However, in some instances, the research projects and proposals were discarded.

29.

Another trade organization was the National Insulation Manufacturers Association ("NIMA"), which formed in December of 1958 as a joint venture trade association to serve as a voice for the mineral insulation industry.  After 1958, personnel of Ruberoid/GAF (defendant herein) attended most, if not all, NIMA meetings at which health hazards were frequently the topic of formal discussions.  NIMA members had unequivocal knowledge of the potential health hazards posed by unprotected and prolonged exposure to excessive quantities of airborne asbestos fiber. The testimony of Harry Kaufman, who came to Ruberoid in 1958 as Assistant Director of Quality Control, admit knowledge of the potential health hazards to an unprotected worker from exposure to asbestos fiber as far back as 1943 when he attended a five month course at the University of Maryland on Industrial Safety.

30.

All defendants made the misrepresentations cited in the foregoing paragraphs despite their knowledge of the falsity, and defendants fraudulently concealed and suppressed the truth about the dangerous nature of the products with the intent to induce purchasers to buy the products and innocent users and employees to continue to be exposed to same without concern for their health.

31.

As a result of the aforementioned acts of all of the hereinabove named defendants, Kelly Giarratano contracted asbestos-related lung cancer which was first diagnosed on approximately August 12, 2021, for which all defendants are jointly, severally, and in solido liable.

32.

All of the hereinabove named defendants are jointly, severally, and *in solido* liable to petitioner for the damages sustained as a result of Kelly Giarratano's contraction of asbestos-related lung cancer and other ill health effects related therewith.  Petitioner, Kelly Giarratano, is entitled to damages for the following: past, present, and future physical pain and suffering; past, present, and future mental pain and suffering; fear of cancer and fear of death and complications; loss of enjoyment of life and lifestyle; reduction in life expectancy; past, present, and future loss of income and loss of earning capacity; past, present, and future medical expenses; loss of personal services, costs of care and assistance, costs of custodial care; humiliation, frustration and inconvenience caused by the defendants; and all other general damages arising out of this action which may be shown at the trial of this matter.

**WHEREFORE**, petitioner, Kelly Giarratano, prays that the defendants named herein be duly cited to appear and answer, and that after all due proceedings are had, that there be judgment rendered herein in favor of petitioner and against defendants for all damages suffered by petitioner together with legal interest and all costs associated with the prosecution of this claim.  Petitioner further prays for all general and equitable relief.

Respectfully submitted,

**ROUSSEL & CLEMENT**

GEROLYN P. ROUSSEL - 1134
PERRY J. ROUSSEL, JR. - 20351
JONATHAN B. CLEMENT - 30444
LAUREN R. CLEMENT - 31106
BENJAMIN P. DINEHART - 33096
1550 West Causeway Approach
Mandeville, LA 70471
Telephone: (985) 778-2733
Facsimile: (985) 778-2734
ATTORNEYS FOR PETITIONER,
KELLY GIARRATANO

**PLEASE SERVE THE PETITION FOR DAMAGES, OPPOSITION TO MOTION FOR EXTENSION OF TIME, NOTICE OF VIDEOTAPED DEPOSITION FOR ALL PURPOSES INCLUDING PERPETUATION PURPOSES, AND THE NOTICE OF RECORDS DEPOSITION ON THE FOLLOWING:**

1.  **HUNTINGTON INGALLS INCORPORATED**
    **(formerly NORTHROP GRUMMAN SHIPBUILDING, INC.,**
    **formerly NORTHROP GRUMMAN SHIP SYSTEMS, INC.**
    **formerly, AVONDALE INDUSTRIES, INC.**
    **and formerly AVONDALE SHIPYARDS, INC.**
    **and formerly, AVONDALE MARINE WAYS, INC.)**
    Through its agent for service of process:
    CT Corporation System
    3867 Plaza Tower Dr.
    Baton Rouge, La. 70816

2.  **LOUISIANA INSURANCE GUARANTY ASSOCIATION**
    (ON BEHALF OF AMERICAN MUTUAL LIABILITY INSURANCE COMPANY)
    Through its agent for service of process:
    Deidre Arceneaux
    2142 Quail Run Drive
    Baton Rouge, LA 70808

3.  **THE TRAVELERS INDEMNITY COMPANY**
    Through its agent for service of process:
    Secretary of State
    Legal Services Sections
    8585 Archives Ave.
    Baton Rouge, La. 70809

4.  **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
    Through its agent for service of process:
    Secretary of State
    Legal Services Sections
    8585 Archives Ave.
    Baton Rouge, La. 70809

5.  **PENNSYLVANIA GENERAL INSURANCE COMPANY**
    Through its agent for service of process:
    Secretary of State
    Legal Services Sections
    8585 Archives Ave.
    Baton Rouge, La. 70809