UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KELLY GIARRATANO | * | CIVIL ACTION |
| VERSUS | * | NO. 22-88 |
| HUNTINGTON INGALLS INCORPORATED, ET AL. | * | SECTION "D" (2) |

## ORDER AND REASONS

Before me is Plaintiff Kelly Giarratano's Motion for Protective Order and Motion to Quash.  ECF No. 134.  Defendant Huntington Ingalls Incorporated timely filed an Opposition Memorandum.  ECF No. 137.  Plaintiff sought expedited hearing, which was granted.  ECF No. 135, 136.  The Court held a hearing on the motion on Monday, October 31, 2022, and thereafter took the matter under advisement.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

## I.    BACKGROUND

Plaintiff Kelly Giarratano filed suit against Huntington Ingalls Incorporated ("HII") and numerous other defendants in state court alleging that she contracted asbestos-related lung cancer and other health effects from exposure to asbestos brought home from work by her grandfather between 1962-1979.  ECF No. 1-1 ¶¶ 3, 10-11.  HII removed based on federal officer removal jurisdiction under 28 U.S.C. § 1442(a)(1) (ECF No. 1), after which Plaintiff filed a First Amended and Supplemental Complaint.  ECF No. 53.  Plaintiff's Amended Complaint seeks a variety of damages, including:

- past, present and future physical and mental pain and suffering;
- fear of cancer and fear of death and complications;

1

- loss of enjoyment of life and lifestyle;
- reduction in life expectancy;
- past, present and future loss of income and earning capacity;[1]
- past, present and future medical expenses;
- loss of personal services, costs of care, assistance, and custodial care; and
- humiliation, frustration and inconvenience.

*Id.* ¶ 77.

HII issued discovery asking for the identity of all medical providers addressing any asbestos-related conditions (Interrogatory No. 17) as well as HIPAA compliant medical authorizations directed to every medical provider who has provided any care for the last 30+ years (since January 1, 1990) (Request for Production No. 3). ECF No. 137-1 at 8, 10. Plaintiff objected to these requests. ECF No. 137-3 at 7, 41.

Plaintiff now seeks to quash the subpoenas to four medical providers (LSU Healthcare Network Kenner Multispecialty Clinic, Dr. Andrew Tilton, Dr. Madeline Crilly, and Dr. James Campbell). ECF No. 134-1 at 2. Plaintiff argues that the subpoenas are procedurally defective because HII provided only 6 days' advance notice rather than the 7-day advance notice required by La. Rev. Stat. § 13:3715.1. *Id.* at 3-4. Plaintiff also argues that the subpoenas are overly broad, seek irrelevant and privileged information, and are not proportional to the needs of the case because the subpoenas seek information about unrelated medical conditions. *Id.* at 4. Plaintiff also asks for a protective order limiting the use and disclosure to this litigation. *Id.* at 5.

In its Opposition, HII explains that it sent copies of its medical provider subpoenas to all parties on October 5, 2022 and began serving same on the medical providers on October 11, 2022. ECF No. 137 at 3; *see also* ECF Nos. 134-9, 137-4. HII contends that, because Plaintiff is suffering from lung cancer, smoking history, cessation and related conditions, primary care physician records are relevant. ECF No. 137, at 3. It argues that Plaintiff cannot satisfy Rule 45's burden to

---

[1] Plaintiff voluntarily dismissed her claims for loss of income and earning capacity. ECF Nos. 133, 138.

quash the subpoenas, federal (not state) law provides the procedural requirements, Plaintiff lacks standing to challenge the subpoenas based on overbreadth, proportionality and relevance, and Plaintiff's medical records are neither irrelevant nor privileged as she waived any privilege by placing her health at issue in this case.  *Id.* at 4-10.

In Reply, Plaintiff argues that Rule 34 does not permit the court or another party to compel a party to sign a medical records release authorization.  ECF No. 142, at 2.  Plaintiff also argues that state privilege law applies under Fed. R. Evid. 501 because her claims are based on state law, and thus, state law supplies the rules of decision.  *Id.* at 3-4.  Further, she argues that she has standing to object to the subpoena because she has a personal right or privilege in the medical records documents sought from the third parties.  *Id.* at 5.  Finally, Plaintiff reiterates her prior arguments that medical records unrelated to the diagnosis at issue are irrelevant and privileged and that HII's request is overbroad and burdensome insofar as it is not limited to records after her cancer diagnosis on August 12, 2021.  *Id.* at 2, 6-7.

## II.   APPLICABLE LAW AND ANALYSIS

### A.  The Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2)(C) directs the Court to limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably

cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).

The relevancy evaluation necessarily begins with an examination of Plaintiff's claims.[2] The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[3]  This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial.  Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[4]

At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[5]  Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[6]  If  relevance is in doubt, the court should be permissive in allowing discovery.[7]

**B.** **Standing to Quash or Modify Third Party Subpoenas Duces Tecum**

Under Federal Rule of Civil Procedure 45(a)(1), a party may serve a subpoena that commands a nonparty to whom it is directed to, among other things, produce designated documents in that person's possession, custody or control.  Third-party subpoenas are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters

---

[2] *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, No. 02-3398, 2006 WL 378523, at *4 (E.D. La. Feb. 17, 2006) (Zainey, J.).

[3] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).

[4] *Id.* n.5 (citation and quotation omitted).

[5] *Id.* (citations omitted).

[6] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).

[7] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).

established by Rule 26.[8]  Rule 45 provides additional protections when subpoenas are issued to non-parties.  Specifically, the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).

The obligation to comply with a subpoena may be suspended by timely filing written objections or a motion to quash.  Fed. R. Civ. P. 45(d)(2)(B); 45(d)(3).  On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden.  Fed. R. Civ. P. 45(d)(3). "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45,"[9] and modification is preferable to quashing the subpoena outright.[10]

The person filing the motion to quash has the burden of proof to demonstrate that compliance would impose undue burden or expense.[11]  To determine whether the subpoena presents an undue burden, the Fifth Circuit considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party

---

[8] *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999) (citations omitted), *aff'd*, 209 F.3d 719 (5th Cir. 2000).
[9] *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016), *aff'd*, 2016 WL 6518863 (E.D. La. Nov. 2, 2016).
[10] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citation omitted); *Tiberi v, CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994); *see also Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("[M]odification of a subpoena is generally preferred to outright quashing....") (citation omitted).
[11] *See Wiwa*, 392 F.3d at 818; *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (citations omitted) (party resisting discovery must show why each discovery request is not relevant or otherwise objectionable).

describes the requested documents; and (6) the burden imposed.[12]   "Whether a burdensome

subpoena is reasonable must be determined according to the facts of the case, such as the party's

need for the documents and the nature and importance of the litigation."[13]   "Further, if the person

to whom the document request is made is a non-party, the court may also consider the expense and

inconvenience to the non-party."[14]

    A *party*, however, may not seek to quash a subpoena directed to a third party when the

party is not in possession of the materials subpoenaed and does not allege any personal right or

privilege with respect to the materials subpoenaed because the party lacks standing.[15]   Further, a

party cannot challenge a Rule 45 subpoena directed to a third party on the basis that the subpoena

is overly broad or seeks irrelevant information because only the responding third party can object

and seek to quash a Rule 45 subpoena on those grounds.[16]   A party who lacks standing under Rule

45 does, however, have standing to seek relief under Rule 26(c).[17]

---

[12] *Wiwa*, 392 F.3d at 818 (internal citations omitted).

[13] *Id.* (internal citations and quotation marks omitted).

[14] *Id.* (internal citations omitted).

[15] *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (citations omitted) (ruling movants lacked standing because they were not in possession of the materials subpoenaed and had no personal right or privilege in the materials subpoenaed); *Black v. DMNO, LLC*, No. 16-02708, 2018 WL 488991, at *2 (E.D. La. Jan. 19, 2018) ("[I]n order to challenge the subpoena, the movant must be: in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena.") (citations omitted); *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016) ("Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45.") (citation omitted); *see also Weatherly v. State Farm Fire & Cas. Ins. Co.*, No. 07-4371, 2009 WL 1507353, at *2 (E.D. La. May 28, 2009) (holding that defendant did not have standing to challenge the subpoena where it had no privilege over the documents); *Guzman v. Latin Am. Ent., LLC*, No. 13-41, 2014 WL 12599345, at *1 (S.D. Tex. July 2, 2014) (Costa, J.) (citing *U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 18–19 (D. Maine 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.")); *Frazier v. RadioShack Corp.*, No. 10-855, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) ("As an initial matter, it should be noted that a plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights . . . that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds.") (citations omitted).

[16] *Salmon v. Waffle House, Inc.*, No. 19-1349, 2020 WL 6708382, at *2 (E.D. La. Nov. 16, 2020) (citing *Frazier*, 2012 WL 832285, at *1).

[17] *Bounds*, 314 F.R.D. at 218 ("Nevertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena.") (citing *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n.2 (E.D.

Under Rule 26, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause" exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order.[18] In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for information.[19] The party seeking the protective order bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[20]

Rule 26 offers a variety of potential options that the court may use to protect the moving party, including forbidding or limiting the scope of discovery into certain matters or requiring that a trade secret or other confidential commercial information not be revealed or be revealed in only a certain way. Fed. R. Civ. P. 26(c)(1)(D), (G). A district court may exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion.[21] The trial court enjoys wide discretion in setting the parameters of a protective order.[22]

Plaintiff has standing to seek the relief requested in this case under Rule 45 because she has a personal interest in her medical records. She also has standing to seek relief under Rule 26.

---

Va. 2012); *Auto–Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005)).

[18] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citation and quotation omitted).

[19] *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004).

[20] *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (citing *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))).

[21] *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999) (citation omitted).

[22] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

### C. <u>Written Authorizations</u>

Citing retired Magistrate Judge Wilkinson's decision in *EEOC v. Resources for Human Development, Inc.*, No. 10-3322, 2011 WL 3841066 (E.D. La. Aug. 31, 2011), Plaintiff argues that HII is not entitled to compel her to sign a medical release authorization.  ECF No. 142 at 1-2.  In that case, Judge Wilkinson cited *McKnight v. Blanchard*, 667 F.2d 477 (5th Cir. 1982), to deny a motion to compel a party to sign release authorizations for a deceased person's medical, income tax and social security records.  As Judge Wilkinson recognized, *McKnight* involved a party seeking to obtain a signed authorization pursuant to Rules 33 and 36, not Rule 34, and dicta in that case suggested that Rule 34 would be a basis to require execution of an authorization, but he had not located any precedent on that issue.  2011 WL 3841066, at *1.

Although not then located by Judge Wilkinson, 15 years before *McKnight*, in *Smith v. Maryland Cas. Co.*, 42 F.R.D. 587, 589 (E.D. La. 1967), Judge Alvin Rubin stated:  "Rule 34 permits the Court to require a party to produce any document under his control.  Obviously, the plaintiff is in control of these records, because, by either granting or withholding her consent, she may determine who shall have access to them.  Therefore, she is ordered to produce them or to execute an authorization for defendant to examine them"[23]  Further, numerous courts within the Fifth Circuit, including this Court, have recognized that Rule 34, along with Rule 37, empower federal courts to compel parties to sign written authorizations consenting to the production of various documents.[24]  And the Fifth Circuit has affirmed imposition of sanctions against a party

---

[23] *Smith*, 42 F.R.D. at 589 (citations omitted).

[24] *See, e.g.*, *Allen v. Indian Harbor Marine, Inc.*, No. 96-3135, 1997 WL 666210, at *1–2 (E.D. La. Oct. 24, 1997) (Schwartz, J.); *Lischka v. Tidewater Servs., Inc.*, No. 96-296, 1997 WL 27066, at *2 (E.D. La. Jan. 22, 1997) (Vance, J.); *DeGruy-Hampton v. Ochsner Clinic Found.*, No. 20-2417, 2021 WL 2514681, at *9 (E.D. La. June 18, 2021) (Currault, M.J.); *Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 507479, *6–8 (M.D. La. Feb. 7, 2019) (Wilder-Doomes, M.J.); *Broussard v. Callon Petroleum Co*., No. 04-2264, 2005 WL 8178118, at *1 (W.D. La. Oct. 28, 2005) (Methvin, M.J.); *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226–28 (N.D. Tex. 2016) (ordering party to sign authorization for release of social security records); *see also Zamora v. GC Servs., LP*, No. 15-

8

who failed to sign written authorization for release of tax records as ordered by the court.[25]  Finally, as Judge Wilkinson later recognized:  "The authority of a federal court, as part of the records request and production process under Fed. R. Civ. P. 34, to require a party to execute forms authorizing the release of relevant records in the actual possession of another is unquestioned."[26]

HII may properly request Plaintiff to execute a written authorization for medical records pursuant to Rule 34, and this Court has the authority to compel her to sign an authorization for release of records under Rules 34 and 37.

### D.  Determination of the Applicable Law Governing the Privilege

To resolve the procedural objections to issuance of the subpoenas, this Court must first determine what law applies to the privilege issue.  Evidentiary privileges asserted in federal court are governed by Rule 501 of the Federal Rules of Evidence:

> The common law – as interpreted by the United States courts in the light of reason and experience – governs claims of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.

Congress enacted the federal officer removal statute in 1815 "to provide a federal forum for cases where federal officials must raise defenses arising from their official duties . . . [and] to

---

048, 2016 WL 8853096, at *4 (W.D. Tex. Aug. 19, 2016) (recognizing that the majority of courts to consider the issue have concluded that a party may be compelled to execute an authorization for release of records).

[25] *Phillips v. Ins. Co. of N. Am.*, 633 F.2d 1165, 1168 (5th Cir. Unit B Jan. 1981); *cf. Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 362 (5th Cir. 2018) (avoiding difficult question of whether signing authorization to release medical records fully satisfies a party's obligations under Rule 34).

[26] *Billiot v. Triple Marine, LLC*, No. 19-449, 2019 WL 2524441, at *1 (E.D. La. June 19, 2019) (citing *Lishka v. Tidewater Servs., Inc*., 1997 WL 27066, at *2 (E.D. La. Jan. 22, 1997) (Vance, J.) and cases cited therein).

protect federal officers from interference by hostile state courts."[27]   In *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 496 (1983), the Supreme Court discussed the distinction between "jurisdictional statutes" and the federal law under which an action arises for Article III purposes. The Court recognized that pure jurisdictional statutes "do nothing more than grant jurisdiction over a particular class of cases" and cannot support Article III "arising under" jurisdiction.[28]   Later, in *Mesa v. California*, 489 U.S. 121, 136–37 (1989), the Court held that § 1442(a) is a pure jurisdictional statute that does nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant; it does not independently support Article III "arising under" jurisdiction.   Rather, it is the raising of a federal defense in the officer's notice of removal that constitutes the federal question under which the action against the federal officer arises for Article III purposes.[29]   Thus, the removal statute merely serves to overcome the "well-pleaded complaint" rule that would otherwise preclude removal based on a federal defense.[30]

The Rule 501 analysis is more complicated when a case involves both federal and state law claims[31] and more readily applied when the case presents only claims premised on federal question jurisdiction or state law claims premised on diversity jurisdiction.[32]   As the advisory comments to Rule 501 note:

---

[27] *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

[28] *Id.* (citing *The Propeller Genesee Chief v. Fitzhugh*, 12 How. 443, 451-543, 13 L. Ed. 1058 (1852); *Mossman v. Higginson*, 4 Dall. 12, 1 L. Ed. 720 (1800)).

[29] *Mesa*, 489 U.S. at 136.

[30] *Id.* (citing *Verlinden*, 461 U.S. at 494; *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (under the "well-pleaded complaint" rule "[a] defense that raises a federal question is inadequate to confer federal jurisdiction"); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)).

[31] *See* Fed. R. Evid. 501, Judiciary Senate Report No. 93-1277 (stating the rule's ambiguity and noting: "The committee has, therefore, adopted what we believe will be a clearer and more practical guideline for determining when courts should respect State rules of privilege. . . . It is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case."); *see also Robertson v. Neuromedical Center*, 169 F.R.D. 80, 82-83 (M.D. La. 1996) (applying federal privilege law to ADA claim with pendent state law claims); *In re Combustion, Inc.*, 161 F.R.D. 51, 53-54 (W.D. La. 1995), *aff'd*, 161 F.R.D. 54 (W.D. La. 1995) (applying federal law to CERCLA claim with pendent state law claims).

[32] *See Porter v. Dauthier*, No. 14-41, 2014 WL 6674468, at *2–*3 (M.D. La. Nov. 25, 2014); *see also Guzman v. Memorial Hermann Hosp. Sys.*, No. 7-2973, 2009 WL 427268, at *3 (S.D. Tex. Feb. 20, 2009).

> *In non-diversity jurisdiction civil cases, federal privilege law will generally apply.*
> In those situations where a federal court adopts or incorporates state law to fill
> interstices or gaps in federal statutory phrases, the court generally will apply federal
> privilege law. . . .   When a federal court chooses to absorb state law, it is applying
> the state law as a matter of federal common law.  Thus, state law does not supply
> the rule of decision (even though the federal court may apply a rule derived from
> state decisions), and state privilege law would not apply.[33]

Thus, state privilege law applies in federal cases only where the State law is self-operative, such
as in a diversity case.[34]   For that reason, *McClain v. Sysco New Orleans*, 19-1801, 2020 WL
11028497 (E.D. La. July 17, 2020) is inapposite as that was a car accident case removed to federal
court solely on the basis of diversity jurisdiction.[35]

This case is a non-diversity jurisdiction civil case, which absorbs state law to address the
personal injury claim.  The Court, therefore, concludes that the procedural requirements of La.
Rev. Stat. § 13:3715.1 do not apply here because federal privilege law governs.

### E.     The Subpoenas

Four subpoenas to medical providers are at issue in this case, each seeking 30+ years' of
medical information.  When a Plaintiff places her medical condition at issue, her medical records
are discoverable and not protected by privilege.[36]  And when pre-existing conditions are raised in

---

[33] Fed. R. Evid. 501, advisory committee notes, 1974 Enactment (citations omitted) (emphasis added).

[34] *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp. 3d 1207, 1245 (D.N.M. 2021) (citing Conf. Rep. No. 1597, 93d
Cong., 2d Sess. (1974); Fed. R. Evid. 501).

[35] *See also Poindexter v. Bonsukan*, 145 F. Supp. 2d 800, 803 (E.D. Tex. 2001) (recognizing that discovery is a
procedural matter governed in federal court by federal law, not state discovery practice) (citing 8 C. WRIGHT & A.
MILLER, FEDERAL PRACTICE AND PROCEDURE § 2005 (Supp. 2000) (noting that, with certain exceptions, it is "wholly
settled that discovery in a federal court is governed only by these rules and that state discovery practices are
irrelevant"); *Broussard v. Lemons*, 186 F.R.D. 396, 397 (W.D. La. 1999) ( "Clearly, federal law governs this discovery
dispute as federal courts sitting in diversity apply the substantive law of the state providing the law of decision while
following federal procedural law.")); *see also U.S. ex rel. Stewart v. Louisiana Clinic*, No. 99-1767, 2002 WL
31819130, at *2 (E.D. La. Dec. 12, 2002) (Louisiana privilege law on medical records does not apply to federal
question cases) (citing cases).

[36] *Tanner v. BD LaPlace, LLC*, No. 17-5141, 2018 WL 3528023, at *2 (E.D. La. July 23, 2018) (Feldman, J.)
(recognizing that privilege may be waived when a party places his medical condition at issue) (citations omitted);
*Bacharach v. SunTrust Mortg., Inc.*, No. 14-0962, 2015 WL 1843007, at *7 (E.D. La. Apr. 22, 2015) (recognizing
that medical records allow a defendant to assess plaintiff's claims and explore alternative explanations for the
plaintiff's claim) (citation omitted); *Stogner v. Sturdivant*, No. 10-125, 2011 WL 4435254, at *5 (M.D. La. Sept. 22,
2011) ("[B]y putting one's medical condition at issue in a lawsuit, a plaintiff waives any privilege to which he may
have otherwise been entitled as to his privacy interests in his medical records.") (citations omitted); *Hicks v. Dowies*,

defense of a claim, broad-ranging discovery may be appropriate.[37]  That does not mean, however, that all medical records from the beginning of time are relevant and/or proportional to the needs of the case.[38]

Courts will often impose both a time limitation and limitation on certain types of treatments and conditions.[39]  Plaintiff objects to certain highly sensitive information that she argues cannot conceivably have any relevance to any claim or defense in this case.  The Court notes that, to the extent that HII seeks substance abuse-related records, that information does not have any conceivable relevance to Plaintiff's asbestos-related lung cancer claim.   Further, Congress recognized a need to maintain the confidentiality of substance abuse records to encourage people to seek treatment when it adopted the Alcohol, Drug Abuse and Mental Health Administration Act, 42 U.S.C. §§ 290aa–290ff (1986) (the "Act"), which prohibits disclosure of records relating to alcohol and substance abuse treatment except by patient consent or court order after a showing

No. 21-1896, 2022 WL 1050311, at *2 (W.D. La. Apr. 7, 2022) (recognizing that a party who places his medical conditions at issue by filing this suit cannot maintain privilege under HIPAA) (citing *Roberts v. River City Care Ctr.*, No. 13-670, 2014 WL 12540478 (W.D. Tex. 2014)).

[37] *Billiot*, 2019 WL 2524441, at *3.

[38] *Id.*; *see also Singleton v. Cannizzaro*, No. 17-10721, 2020 WL 375600, at *3 (E.D. La. Jan. 23, 2020) (recognizing that, while medical records are discoverable and not subject to privilege when a plaintiff places his medical condition at issue, it does not mean that all medical records are relevant and proportional to the needs of the case); *Tijerina v. Guerra*, No. 19-285, 2020 WL 1663181, at *10 (S.D. Tex. Apr. 1, 2020) (denying medical records request that was unlimited in time based on Rule 26(b)(1) proportionality factors where movant did not establish why the requested 5-year period would be insufficient); *Gray-Standberry v. Ashley Distrib. Servs., Ltd.*, No. 20-0638, 2021 WL 2792984, at *3 (W.D. Tex. Mar. 3, 2021) (finding request for 27 years' of medical records, including pediatric records, not proportional); *Stogner,* 2011 WL 4435254 at *6 (limiting medical records request to 10 years after finding request for 23 years' worth of records excessive); *Cummins v. Lollar*, No. 12-560, 2015 WL 12731746, at *2 (N.D. Tex. Jan. 5, 2015) (request for 50 years' of medical records dating to birth is excessive) (citation omitted).

[39] *Victoria W. v. Larpenter*, No. 00-1960, 2001 WL 674156, at *2 (E.D. La. June 14, 2001) (allowing discovery of records reflecting plaintiff's diagnosis with manic depression, bipolar disorder, and borderline personality disorder as relevant to emotional distress claim but denying request for records that provided no time or type of treatment limitations); *Robinett v. State Farm Mut. Auto. Ins. Co*., No. 02-0842, 2002 WL 31498992, at *4 (E.D. La. Nov. 7, 2002) (Vance, J.) (recognizing defendant had right to discover medical records to determine whether plaintiff's preexisting medical condition impaired his driving at the time of the accident and to determine for impeachment purposes whether plaintiff's various medications affected his credibility), *aff'd*, 83 F. App'x 638 (5th Cir. 2003); *see also Singleton*, 2020 WL 375600, at *3 (E.D. La. Jan. 23, 2020) (assessing relevance of medical records to claims or defenses and proportionality to determine discoverability).

12

of good cause.[40]   Both the statute and related regulations carry a strong presumption against disclosing records of this kind, and the privilege afforded "should not lightly be abrogated."[41]   In assessing good cause, the court weighs the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services.  This is a heavy burden and met only in exceptional cases.[42]

Considering the facts of the case and the arguments of counsel, the Court finds HII's request for 30+ years' of medical records not proportional to the needs of the case.  The Court limits the scope of each subpoena duces tecum to the last fifteen (15) years. In addition, to the extent HII seeks substance abuse records, it has not made, or even attempted to make, the required showing of good cause.  Accordingly, the subpoenas issued to LSU Healthcare Network Kenner Multispecialty Clinic, Dr. Andrew Tilton, Dr. Madeline Crilly, and Dr. James Spencer Campbell are modified to exclude any drug, alcohol, or substance abuse records from production.  Likewise, to the extent the subpoenas purport to require production of psychiatric treatment, counseling or consultation records, the subpoenas are likewise modified to exclude same.  Accordingly, the production will not include records that fall within these categories.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the four subpoenas at issue are modified to require production of the last 15 years' of medical records, excluding any records reflecting psychiatric or substance abuse treatment, consultation or counseling.  Accordingly,

IT IS ORDERED that Plaintiff's Motion to Quash and for Protective Order (ECF No. 134) is GRANTED IN PART AND DENIED IN PART as stated herein.  Plaintiff is directed to sign

---

[40] *Guste v. Pep Boys-Manny, Moe & Jack, Inc*., No. 02-3355, 2003 WL 22384947, at *3 (E.D. La. Oct. 14, 2003) (citing *Mosier v. American Home Patient, Inc*., 170 F. Supp. 2d 1211, 1213 (N.D. Fla. 2001)).
[41] *Id*. (citing *Fannon v. Johnson*, 88 F. Supp. 2d 753, 758 (E.D. Mich. 2000)).
[42] *Fannon*, 88 F. Supp. 2d at 766.

HIPAA-compliant authorizations for the release of medical records from LSU Healthcare Network Kenner Multispecialty Clinic, Dr. Andrew Tilton, Dr. Madeline Crilly, and Dr. James Spencer Campbell covering medical records for the last 15 years, excluding any psychiatric or substance abuse treatment, consultation or counseling records.  A separate protective order limiting the use and disclosure of medical records produced in this case will be issued.

New Orleans, Louisiana, this ____31st____ day of October, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE